J. Malcolm DeVoy IV (Nevada Bar No. 11950)
jmd@Randazza.com
RANDAZZA LEGAL GROUP
7001 W. Charleston Boulevard, #1043
Las Vegas, Nevada 89117
Telephone: (888) 667-1113
Facsimile: (305) 437-7662
Randazza.com

Attorney for Defendants,
*NewsBlaze LLC and*
*Alan Gray*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN, LLC, a Nevada limited-liability company<br><br>Plaintiff,<br><br>vs.<br><br>NEWSBLAZE LLC, a California limited liability company; and Alan Gray, an individual,<br><br>Defendants. | Case No.: 2:11-cv-00720<br><br>**DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** |

## DEFENDANTS' MOTION TO DISMISS
## FOR LACK OF SUBJECT MATTER JURISDICTION

Defendants NewsBlaze LLC, and Alan Gray (collectively, "NewsBlaze," or the "Defendants"), by and through their counsel, move to dismiss Plaintiff Righthaven, LLC's (hereinafter "Righthaven['s]," or the "Plaintiff['s]") Complaint (Doc. # 1) filed on May 5, 2011 for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1) and Local Rule 7.2.

### I. Introduction

Plaintiff filed this lawsuit against the Defendants on May 5, 2011, which NewsBlaze now responds to with this Motion to Dismiss for lack of subject matter jurisdiction. Pursuant to this Court's April 14, 2011 Order in *Righthaven LLC v. Democratic Underground LLC*, Case No. 2:10-cv-01356, Doc. # 93 (D. Nev. Apr. 14, 2011), evidence regarding Righthaven's relationship

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

- 1 -

with Stephens Media LLC (hereinafter "Stephens Media") has been unsealed and released to the public.   On April 15, 2011, an unredacted version of the Defendants' Supplemental Memorandum Addressing Recently Produced Evidence Relating to Pending Motions in the Democratic Underground case was made available on the Public Access to Court Electronic Records ("PACER") system, as well as this court's CM/ECF system. Case No. 2:10-cv-01356 Doc. # 79 (D. Nev. Mar. 9, 2011). A true and correct copy of Exhibit A to Doc. # 79 in *Democratic Underground* is attached to this Motion as Exhibit A.

This document clearly reveals that Righthaven lacked the rights to bring this suit, and thus this court lacks jurisdiction over this matter.   Nevertheless, on May 9, 2011, Righthaven executed a "Clarification" (hereinafter, the "'Clarification'") of the Agreement between Righthaven and Stephens Media LLC (hereinafter, "Stephens Media").  This execued document was filed with the court in numerous cases, including *Righthaven LLC v. Hoehn*, 2:11-cv-00050 (Doc. # 24 Exh. 3) (D. Nev. May 9, 2011); a true and correct copy of this "Clarification" is attached to this Motion as Exhibit B.  This "Clarification" supposedly rectifies the defects in Righthaven's Agreement, which governs the terms on which Stephens Media assigns its copyrights to Righthaven.  The "Clarification", however, does no such thing, and serves only as a cynical attempt to obfuscate the unlawful nature of Righthaven's enterprise: The "Clarification," along with the Agreement, is a mere acquisition of the right to sue for copyright infringement without the true transfer of any other rights under Title 17.  Just days ago, this District found that Righthaven lacked standing and therefore subject matter jurisdiction to bring a nearly identical case, *Righthaven LLC v. Democratic Underground LLC*, Case No. 2:10-cv-01356 (Doc. # 116) (D. Nev. June 14, 2011).

Under Rule 12(b)(1), subject matter jurisdiction is an essential element to every lawsuit, and must be present for any court to hear a dispute.  In this case, Righthaven does not have sufficient rights in the work putatively assigned to it by Stephens Media to bring – or maintain – its case against NewsBlaze.  As such, the Court should dismiss Righthaven's suit.

//

//

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

## II. Legal Standards

Subject matter jurisdiction is an essential element to every lawsuit and must be demonstrated "at the successive stages of the litigation." *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 954 (9th Cir. 2011) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). The existence of subject matter jurisdiction is an ongoing inquiry that a court must conduct *sua sponte* in order to continue the case. *Chapman*, 631 F.3d at 954; *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002). Where subject matter jurisdiction is absent, a court has no discretion and must dismiss the case. *Chapman*, 631 F.3d at 954.

A central component to subject matter jurisdiction is the question of standing, which requires that the party experience actual or imminent harm. *Lujan*, 504 U.S. at 561 (citing *Whitmore v. Ark.*, 495 U.S. 149, 155 (1990)). A party's standing to bring a case is not subject to waiver, and can be used to dismiss the instant action at any time. Fed. R. Civ. P. 12(h)(3); *U.S. v. Hays*, 515 U.S. 737, 742 (1995); *Chapman*, 631 F.3d at 954.

## III. Argument

### A. Righthaven Has No Standing to Bring This Case.

#### 1. *Righthaven's Agreement Does Not Confer Sufficient Copyright Rights for Righthaven to Bring this Lawsuit.*

Righthaven is neither the owner nor exclusive holder of any rights in the copyrighted work underlying this lawsuit. Copyright assignments occurring under Righthaven's Agreement with Stephens Media have been analyzed by this District, and found to transfer nothing more than a bare right to sue – which is impermissible under the Copyright Act – and thus precluded Righthaven from being recognized as the Copyright owner. *Democratic Underground*, Case No. 2:10-cv-01356 (Doc. # 116 at 6:3-7:13.) As such, Righthaven has suffered no injury or other cognizable harm required for it to have standing under *Lujan*. *Id*. at 11:3-13. Absent this very basic requirement of standing, there is no subject matter jurisdiction in this case, and it must be dismissed.

For a plaintiff to sue for copyright infringement, it must have an exclusive right in a copyright. *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005); *see*

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

*Sybersound Records v. UAV Corp.*, 517 F.3d 1137, 1144 (holding that only owners and "exclusive licensees" may enforce a copyright or license).   Without such exclusivity, a plaintiff has no standing to enforce a copyright. *Sybersound*, 517 F.3d at 1144.   As status as a copyright owner or exclusive licensee is prerequisite for enforcing such a right, a plaintiff with neither lacks standing to pursue an infringement claim on that copyright, as it cannot experience the injury requisite for Article III standing under *Whitmore* and *Lujan*.

Righthaven lacks sufficient rights under *Silvers* and *Sybersound* to bring this lawsuit. The Strategic Alliance Agreement (hereinafter, the "Agreement") between Stephens Media and Righthaven found in Exhibit A obviates the need to examine the copyright assignment for the work at issue in this case.[1]   Indeed, the Agreement makes it abundantly clear that Righthaven actually has *no* rights in the copyrights it claims.   Most importantly, Section 7.2 of the Agreement, Exhibit A, provides as follows:

> Despite any such Copyright Assignment, **Stephens Media shall retain (and is hereby granted by Right*haven*) an exclusive license to Exploit the Stephens Media Assigned Copyrights** for any lawful purpose whatsoever and **Right*haven* shall have no right or license to Exploit or participate in the receipt of royalties from the Exploitation of the Stephens Media Assigned Copyrights other than the right to proceeds in association with a Recovery**. To the extent that Right*haven's* maintenance of rights to pursue infringers of the Stephens Media Assigned Copyrights in any manner would be deemed to diminish Stephens Media's right to Exploit the Stephens Media Assigned Copyrights, Right*haven* hereby grants an exclusive license to Stephens Media to the greatest extent permitted by law so that Stephens Media shall have unfettered and exclusive ability to Exploit the Stephens Media Assigned Copyrights. Right*haven* shall have no Obligation to protect or enforce any Work of Stephens Media that is not Stephens Media Assigned Copyrights.

Emphasis added; "Exploit" defined in Exhibit A, Schedule 1.   Thus, while Stephens Media gives Righthaven the illusory rights for Righthaven to be *recognized* as the copyright holder of the

---

[1] Judge Hunt ordered this document to be made public in *Righthaven LLC v. Democratic Underground LLC*, Case 2:10-cv-1356 Order, Doc. # 93 (D. Nev., Apr. 14, 2011).  His rationale included the fact that the contents of this document would have an impact on all Righthaven cases.  "As I have read these and other motions in this case, and considered the multitude of cases filed by Righthaven, on the claimed basis that Righthaven owns the copyrights to certain Stephens Media copy, it appears to the Court that there is certainly an interest and even a right in all the other defendants sued by [Righthaven] to have access to this material."  *Id.* at 4.

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

works at issue in its lawsuits, it does not provide any transfer any of the rights in 17 U.S.C. § 106 that must be transferred to make a valid copyright assignment or license, and thus grant the assignee the right to sue. *See Silvers*, 402 F.3d at 885; *Democratic Underground*, Case No. 2:10-cv-01356 (Doc. # 116 at 6:3-17).  The "assignment" is a transparent sham that is designed to make Righthaven *appear* to be a copyright assignee for the purposes of filing suit, meanwhile the actual rights at issue are governed by this Agreement, which renders the assignment meaningless. (Exh. A.)  The Agreement even specifically precludes Righthaven from the most basic of assignee rights and prohibits Righthaven from "Exploit[ing]" (Exh. A at Schedule 1) the copyrighted works through distribution, publication or licensing.  In the end, Stephens Media is the only party to the Agreement with any exclusive rights in the copyrighted content.

But that is not the full extent of the sham and the fraud that has been perpetrated upon this court hundreds of times – as a right of reversion is also included in the Agreement.  As seen in Section 8 of the Agreement, Exhibit A:

> Stephens Media shall have the right at any time to terminate, in good faith, any Copyright Assignment (the "Assignment Termination") and enjoy a right of complete reversion to the ownership of any copyright that is the subject of a Copyright Assignment; provided, however, that if Right*haven* shall have commenced an action to prosecute an infringer of the Stephens Media Assigned Copyrights, Stephens Media shall be exclusively responsible for effecting termination of such action including, without limitation, all Losses associated with any dismissal with prejudice.

In addition to Stephens Media having the exclusive license to use the copyrights for everything but Righthaven's lawsuits, it also retains the ability to reclaim those rights at any time.  Righthaven does not even acquire the exclusive right to sue, as the full text of Section 8, found in Exhibit A, specifically contemplates Stephens Media litigating the infringement of the copyrights it assigns to Righthaven.

This is not a true copyright ownership that Righthaven has acquired, nor is it even an exclusive license – it is simply an attempt to illegally assign a copyright claim.  And it is exactly that narrow, exploitative interest that the Ninth Circuit held flew in the face of the Copyright Act,

Randazza
Legal Group
7001 W Charleston Blvd
# 1043
Las Vegas, NV 89117
(888) 667-1113

and clearly stated could not be the basis of a copyright infringement lawsuit, in *Silvers*. 402 F.3d at 890; *see also Sybersound*, 517 F.3d at 1144; *Democratic Underground*, Case No. 2:10-cv-01356 (Doc. # 116 at 3:3-4:13).

### 2. *Righthaven's "Clarification" Also Fails to Give Righthaven Standing.*

Righthaven attempted to salvage its beleaguered Agreement by executing the "Clarification," which memorialized the parties' intent in creating the initial Agreement. (Exh. B.)   Contrary to Righthaven's hopes, though, this "Clarification" served only to make Righthaven's naked use of its acquired copyrights as the basis of lawsuits – and only as the basis of lawsuits – even clearer.

The "Clarification" does not retroactively remedy Righthaven's lack of standing.  While a subsequently executed agreement provides clarification regarding the parties' intent to cure standing defects in copyright cases, it does not retroactively confer standing that previously did not exist. *See Billy-Bob Teeth, Inc. v. Novelty, Inc.,* 329 F.3d 586, 591 (7th Cir. 2003); *Imperial Residential Design, Inc. v. Palms Dev. Group, Inc.,* 70 F.3d 96, 99 (11th Cir. 1995); *Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.,* 29 F.3d 1529, 1532 (11th Cir. 1994); *Infodek, Inc. v. Meredith-Webb Printing Co., Inc.,* 830 F. Supp. 614, 620 (N.D. Ga. 1993).  This District has rejected Righthaven's reliance on these cases; Righthaven is not able to create facts that would potentially confer standing once the case has been filed. "'The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed.'" *Lujan*, 504 U.S. at 571 n.4 (1992) (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989)) (emphasis in *Lujan*); *Democratic Underground*, Case No. 2:10-cv-01356 (Doc. # 116 at 7:20-22).

The "Clarification" is not relevant or binding on this case.  Righthaven filed its Complaint against the Defendants (Doc. # 1) on May 5, 2011, and purported to obtain the copyrights underlying this lawsuit from Stephens Media, prior to its May 9, 2011 execution of the "Clarification."  Thus, the "Clarification" cannot be used to rescue Righthaven's failed claim of standing, or to confer subject matter jurisdiction on the court. *Democratic Underground*, Case No. 2:10-cv-01356 (Doc. # 116 at 7:15-9:24).  Nevertheless, the "Clarification" is analyzed to

- 6 -

demonstrate that, even if deemed effective by the Court, it undermines Righthaven's standing to bring suit under the copyrights "obtained" from Stephens Media.

### i. The "Clarification" Denies Righthaven of Substantially All Ability to Use Its Assigned Copyrighted for Anything – Except Lawsuits.

Despite the May 9, 2011 "Clarification," Righthaven's Agreement with Stephens Media provides it with nothing more than the bare right to sue.    An important component of Righthaven's "Clarification" is the revision of Agreement § 7.2 (Exh. A § 7.2) to no longer give Stephens Media an exclusive license to Exploit (defined in *id.* at Schedule 1) the copyrighted works for "any lawful purpose" (*id.* § 7.2).  In its place, as the putative owner of the copyright, Righthaven has granted Stephens Media a non-exclusive license to Exploit the copyrighted work "to the greatest extent permitted by law" on condition that 1) Stephens Media pay Righthaven $1.00 per year for this right, and 2) that Righthaven give Stephens Media 30 days notice if it decides to Exploit the copyrighted work or receive any royalties from the copyright's use other than in connection with lawsuits, with failure to do so constituting a material breach of the Agreement. (Exh. B § 1.)

This aspect of the "Clarification" is problematic for numerous reasons.    First, Righthaven's non-exclusive license to Stephens Media contains no definitions as to duration, geography or media covered, but haphazardly lets Stephens Media use the copyright assigned to Righthaven "to the greatest extent permitted by law." (*Id*.)  This broad language impairs the markets and interests of other licensees to which Righthaven could license its copyrighted works, such as those that better serve markets in which Stephens Market is permitted to compete, and especially in light of Righthaven's infringement litigation arrangement with Stephens Media evinced in Exhibit A §§ 3-5, and unchanged by the "Clarification."

Moreover, under the "Clarification," Righthaven's unilateral use of the assigned copyright would constitute a material breach of the Agreement, allowing Stephens Media to seek injunctive relief against Righthaven for using the copyright that it ostensibly owns. (Exh. B § 1.) Such an extreme limitation by the assignor of a copyright is inimical to ownership of a copyright, yet in a desperate attempt to retain the right to extort money from NewsBlaze (and hundreds of

Randazza
Legal Group
7001 W Charleston Blvd
# 1043
Las Vegas, NV 89117
(888) 667-1113

- 7 -

other defendants), Righthaven dishonestly insists that it is the owner of the assigned Stephens Media copyrights. (Exh. B § 3.)  This dishonesty must not be rewarded.

Stephens Media's $1.00-per-year license and royalty fee (Exh. B § 1) is also misleading. While a nominal fee for licensing back the copyright Stephens Media originally assigned to Righthaven, this sum is vastly outweighed by the revenues Stephens Media receives from Righthaven's litigation on the assigned copyright, as the Agreement – unaltered by the "Clarification" in this respect – entitles Stephens Media to 50% of any recovery Righthaven obtains from litigation. (Exh. A § 5).  With all of the components taken together, Stephens Media assigns its copyright to Righthaven and pays $1.00 in order to receive 50% of Righthaven's litigation recovery.[2]  Based on what little public information is available about Righthaven's settlements, Stephens Media's recovery entitlement per copyright assignment has been orders of magnitude greater than $1.[3]  Indeed, without the recovery clause in § 5 of the Agreement (Exh. A. § 5), this entire arrangement would fail to be profitable for Stephens and Righthaven and make no sense for either party, as Stephens assigns only copyrights that have been – or it believes have been – infringed. (*See* Exh. A. § 3.)  It makes no sense for Stephens Media to assign only its infringed copyrights to Righthaven, just to license them back and give Righthaven the sole "right" to sue for infringement,[4] unless Righthaven's only purpose is to sue on these assigned copyrights.

Righthaven and Stephens Media also used the "Clarification" to amend the reversion provisions of its Agreement.  Instead of allowing Stephens Media to have a complete reversion of the copyright (Exh. A § 8), the "Clarification" allows Stephens Media to, at any time, give Righthaven 14 days notice that it will repurchase the previously assigned copyright for $10. (Exh. B § 2.)  What's more, upon exercising this option, Stephens Media must repay Righthaven the costs Righthaven had undertaken to pursue infringement actions on that assigned copyright.

---

[2] This presumably includes sharing any attorneys' fees award with Stephens Media, potentially violating Fed. R. Civ. P. 54(d)(2).

[3] *See* Righthaven Lawsuits, http://righthavenlawsuits.com/ (*last accessed* May 10, 2011) (providing Righthaven's estimated revenues based on lawsuit settlements).

[4] The right to sue for copyright infringement is not one of the exclusive copyright rights provided under 17 U.S.C. § 106.

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

(*Id*.)  This revised Section 8.2 goes into considerable detail governing how Righthaven will be compensated and disputes settled in the event of Stephens Media exercising its unilateral right to repurchase its assigned copyright from Righthaven, even at the cost of terminating Righthaven's pending litigation (*id*.) – a profound issue that belies Righthaven's claim as the true, legal and beneficial owner of the assigned copyrights.

Operating together, sections 1 and 2 of the "Clarification" make it clear that Stephens Media retains full ownership of the copyrights that Righthaven claims to own. (Exh. B §§ 1 and 2.)  If Righthaven wants to exploit or otherwise license the assigned copyright, it must give Stephens Media 30 days' notice before doing so. (Exh. B § 1.)  Yet, once given notice of Righthaven's intent to use the copyright it supposedly owns, Stephens Media may exercise its rights under new § 8.1 to repurchase the copyright with 14 days' notice and the payment of $10. This creates a loop where, if Righthaven were to even try to use Stephens Media's assigned copyrights for a purpose other than litigation, Stephens Media could (and certainly would) snatch them back before Righthaven could actually use them.  Righthaven's and Stephens Media's characterization of this arrangement as "ownership" is beyond bizarre, and reveals their intent to call an unlawful assignment of the right to sue "ownership" in an effort to misdirect the Court.

Substantively, this is not a non-exclusive license, but an exclusive license to Stephens Media.  This mislabeled exclusive license permits Stephens Media to use the assigned copyright "to the greatest extent permitted by law" (*id*.) up to and until the time Righthaven uses or licenses the copyright for a purpose other than infringement litigation. (*Id*.)  Should Righthaven provide Stephens Media notice that it intends to use the copyright for non-litigation purposes, though, Stephens Media can buy back its rights before anyone else can use the copyrights supposedly owned by Righthaven. (Exh. B §§ 1 and 2.) *Sybersound*, 517 F.3d at 1150-51 (holding that only exclusive licensees may use or enforce the rights they possess); *Davis*, 505 F.3d at 101 (observing that "no one other than the exclusive licensee may exercise the right" where there is an exclusive license).

//

//

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

1

2

3

***ii. Taken Together, the Terms of Rightaven's Agreement and "Clarification" Show that Righthaven is not the Owner of the Assigned Copyrights, but has Merely been Assigned a Right to Sue.***

4

5

6

7

8

9

10

11

Righthaven's and Stephens Media's "Clarification" describes Righthaven as the copyright "owner," but it is a word without meaning in this circumstance. (Exh. B § 3.)  Just as a child that lacks understanding of the world around her may call a dog a "cat," that does not make it so.  Righthaven and Stephens Media have misidentified Righthaven as the owner of Stephens Media's assigned copyrights in § 3 of the "Clarification" (*id.*). This characterization of Righthaven as an owner is inaccurate in light of the excessive restrictions on Righthaven's use of the assigned copyrights contained within the Agreement (Exh. A) and amplified in the "Clarification" (Exh. B).

12

13

14

15

16

17

18

19

20

It is not uncommon for courts to encounter restrictive agreements that purport to transfer ownership of a copyright but, in reality, convey no such right. In *Lahiri v. Universal Music & Video Distribution Corporation*, 606 F.3d 1216, 1222 (9th Cir. 2010) the appeals court found that a settlement agreement purportedly recognizing a party in the litigation as an "owner" of a copyright was too restrictive to convey such a right, holding that "[t]he record demonstrates [the attorney] misled the district court by use of a settlement agreement that deceptively used ownership language, but did not convey or recognize [the assignee's ownership]."  This language should be of great instructive value for this Court, as the record in this case demonstrates the same thing.

21

22

23

24

25

26

27

Similarly, in *Nafal v. Carter*, the court held that the plaintiff's description in the putative assignment as a "co-owner" was not dispositive of the plaintiff's ownership rights. 540 F. Supp. 2d 1128, 1141 (C.D. Cal. 2007).  Instead, the court held that the relevant test to determine proper ownership of a copyright was "Whether an agreement transfers rights that are exclusive or nonexclusive is governed by the substance of what was given to the licensee and not the label that the parties put on the agreement." *Id*. at 1141-42, citing *Althin v. W. Suburban Kidney Ctr.*, 874 F. Supp. 837, 843 (N.D. Ill. 1994).

28

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

- 10 -

In *Nafal*, the document allegedly giving the plaintiff an ownership interest in the copyright prohibited him from "exercising any decision-making authority over almost every portion of the License Agreement." 540 F. Supp. 2d at 1142.  Accordingly, the court found that Nafal was not the owner of the work, lacked Article III standing to pursue a copyright infringement claim, and disposed of the case at summary judgment. *Id*. at 1144.  Similarly, in *Althin*, the trial court found that the plaintiff company lacked standing to bring its copyright infringement claims. 874 F. Supp. at 837.  Upon review, the court found that the assignment agreement that putatively made the company an exclusive copyright right holder merely conveyed a non-exclusive license to the plaintiff company. *Id*.  Specifically, the court found that the rights transferred by the parties' agreement under the 1976 Copyright Act were "governed by the substance of what was given to the licensee and not the label that the parties put on the agreement." *Id*. As the licensor gave the licensee no right to transfer or assign the license agreement, with only a very narrow exception, the court held that Althin did not acquire sufficient rights to have standing to enforce them against others' infringement, and thus dismissed the case on the defendant's Fed. R. Civ. P. 12(b)(1) Motion to Dismiss. *Id*.

As set forth above, Righthaven has extraordinarily limited rights for a copyright "owner." Righthaven's fundamental rights to dispose of its copyrights are so limited and crippled that cannot even use them for non-litigation purposes without seeking Stephens Media's approval, lest it "materially breach" its Agreement. (Exh. B § 1.)  Whenever Stephens Media wishes, with minimal notice, it may, without opposition, repurchase its assigned copyrights for $10 apiece. (Exh. B § 2.)  As is apparent from the Agreement, the only thing Righthaven has any authority to do is to pursue infringement litigation. (Exh. A §§ 3-5.)

A number of provisions in the Agreement that are not affected by the "Clarification" further deny Righthaven ownership of the copyright, and reserve rights to Stephens Media far beyond those due to a non-exclusive licensee.   As part of its copyright assignments to Righthaven, Stephens Media is entitled to:

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

- 11 -

> maintain Encumbrances on Stephens Media Assigned Copyrights as part of an overall funding securitization whereby all or substantially all of Stephens Media's assets are Encumbered as part of said funding securitization and Stephens Media Assigned Copyrights are not singled-out as or part of a particularized group of Encumbered assets.

(Exh. A § 9.3.)  This provision entitles Stephens Media, putatively the non-exclusive licensee of the assigned copyrights under the "Clarification", to mortgage the copyrights ostensibly owned by Righthaven.   Thus, despite Righthaven being the apparent owner of these copyrights, Stephens Media is entitled to use them as security for funding and other financial obligations. This is inconsistent with the tale that Rightaven now weaves before this Court.

Stephens Media retains a number of other rights in the copyrights Righthaven claims to own.  In Agreement § 3.3 (*id*. § 3.3), Stephens Media retains the right to reassign the copyright, despite Righthaven's ownership, if Righthaven declines to sue for its infringement.    If Righthaven was the sole and true owner of the assigned copyright, Stephens Media would have no such rights, yet this section of the Agreement gives Stephens Media the right to reassign a copyright that it insists is owned by Righthaven. (*Id*.)  Righthaven further reveals the flimsiness of its "ownership" in Agreement § 3.4, in which it does not even have the exclusive right to conduct litigation, and grants Stephens Media – a mere non-exclusive licensee under the "Clarification," which normally would not have standing to sue for infringement – the right to pursue infringement litigation on its own, without Righthaven. (*Id*. § 3.4.)

In sum, all of Righthaven's rights to the copyrights assigned to it by Stephens Media are completely beholden to Stephens Media's unfettered whims: From Righthaven's ability to exploit or license the work to a party other than Stephens Media and Stephens Media's right to re-purchase any assigned copyright for $10 without Righthaven having any ability to oppose, to Righthaven's sole pre-authorized use of the assigned copyright being for copyright infringement under Agreement §§ 3.1-3.4 and Stephens Media's ability to pursue its own copyright infringement lawsuits.  Stephens Media's rights and privileges permeate the Agreement and "Clarification" so completely and thoroughly that Righthaven's "ownership" of the assigned copyright is little more than a cruel joke at NewsBlaze's expense (and the expense of hundreds

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

1   of other defendants who have been sued under this unlawful arrangement, to say nothing for the

2   poor souls who have paid Righthaven its extortionate demands).

3       To the extent this Court must examine this Agreement, and correct it as Righthaven has

4   encouraged the Court to do in § 15.1 of its Agreement (*id*. § 15.1) in order to effect the parties'

5   manifest intent, it should find that it is nothing more than a vehicle to unlawfully transfer the

6   right to sue, and no other rights, under the guise of copyright ownership. Yet, Righthaven's

7   manifest intent, evidenced in its operating agreement, is to do nothing but register copyrights to

8   create the appearance of ownership and then sue for their infringement.  Righthaven's operating

9   agreement, in its complete and redacted form submitted, is contained in the public record as an

10  exhibit to a filing in *Righthaven LLC v. DiBiase*, Case No. 2:10-cv-01343 (D. Nev. Apr. 17,

11  2011) (Doc. # 51).  A true and correct copy of excerpts therefrom, containing sections 3.2 and

12  19.4, is attached as Exhibit C.

13      In relevant part, § 3.2(d) and (e) state that Righthaven's purpose will be to register

14  copyrights it "obtains" – flimsily, as seen in the Agreement – and use them as the basis for

15  infringement litigation; Righthaven's intent was never to rightfully own or productively use the

16  obtained copyrights. (Exh. C § 3.2.)  Righthaven even foresaw the problems addressed in this

17  Motion and by this District in *Democratic Underground*.  Section 19.4(d) of its operating

18  agreement identifies the prevailing unlawfulness of obtaining the bare right to sue for copyright

19  infringements, and, in a roundabout way, disclosed it as a risk that "the willingness of consumers

20  to understand and agree to the assignment and license-back structure that is inherent in the

21  Company's business structure may not be consistent *or even prevalent*" (Exh. C § 19.4(d))

22  (emphasis added).

23      Indeed, the Agreement and its "Clarification" haphazardly consider Righthaven's ability

24  to use and protect its copyright rights in all arenas except its meticulously detailed scheme to

25  pursue infringement litigation on the assigned copyrights in Agreement §§ 3-5. (Exh. A. §§ 3-5.)

26  The very inclusion of § 15.1 (*id*. § 15.1) in the Agreement, and its retention in the

27  "Clarification," demonstrates that Righthaven and Stephens Media knew their arrangement was a

28  sham, yet they couldn't find a way to make the Righthaven model work – predominantly because

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

- 13 -

such operations are prohibited by *Silvers* and other law in this Circuit – and want the Court to change the parties' agreement to effectuate its unlawful scheme.  Not only is the Agreement and "Clarification" between Stephens Media and Righthaven unlawful, so too is the parties' intent – to transfer the right to sue to Righthaven, with no other rights – and the Court cannot cure what ails Righthaven and its business model.

The operation of this Agreement and its "Clarification" is nothing more than the transfer of an accrued right to sue without any exclusive rights.  This practice has been held unlawful in every jurisdiction to consider it, including the controlling Court of Appeals for the Ninth Circuit. *Hyperquest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377, 383 (7th Cir. 2011); *U.S. v. Chalupnik*, 514 F.3d 748, 753 (8th Cir. 2008); *Davis v. Blige*, 505 F.3d 90, 103 (2d Cir. 2007); *Silvers*, 402 F.3d at 885; *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991); *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27 (2d Cir. 1982); *see also Sybersound*, 517 F.3d at 1144.  No matter what Righthaven calls the rights it supposedly obtains, substantive analysis reveals them to be little more than the bare right to sue – something that not only is not provided for in 17 U.S.C. § 106, but has been specifically held to be unlawful in case after case, and runs directly contrary to the Copyright Act's entire purpose.

### B.      Righthaven has Willfully Deceived this Court, and its Complaint Should be Dismissed on that Basis.

Righthaven fought mightily to keep this evidence from the public and from all defendants in its legion of cases brought in this District.  *See generally Democratic Underground*, Case No. 2:10-cv-1356.  An examination of the document and its implications for Righthaven's business model make the reason plain – it reveals the unlawful nature of Righthaven's actions before this court and renders all of its lawsuits null and void.  For this reason, the Court has an independent justification for dismissing this case.

This Court has the inherent power to dismiss an action when a party has "willfully deceived" the Court and "engaged in conduct utterly inconsistent with the orderly administration of justice." *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983); *Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.*, 682 F.2d 802, 806 (9th Cir. 1982).  Such conduct is

Randazza
Legal Group
7001 W Charleston Blvd
# 1043
Las Vegas, NV 89117
(888) 667-1113

inimical to the proper and equitable use of not only this Court's resources, but the justice system as a whole.  There is little doubt, though, that this is exactly what Righthaven has done in this case.

In the Agreement, Stephens Media retains an "exclusive license" to exploit the copyrights allegedly assigned to Righthaven. (Exh. A § 7.2.)  Righthaven has no right to receive royalties for the copyrighted work's use, other than the recovery it is entitled to from litigation; additionally, Righthaven specifically gives Stephens Media an unspecified – but expansive[5] – exclusive license to exploit the copyrights. (*Id*.)  The extent to which Righthaven putatively owns the copyright is further undermined by Stephens Media's right to reversion, which allows it to take back the copyright at almost any time (*Id*. § 8.)

Meanwhile, in Righthaven's Complaint, it deceptively claims to be the "owner" of the copyrighted work (Doc. # 1 ¶¶ 11, 23) and avers to have the exclusive rights to reproduce the work, create derivatives of the copyrighted work, distribute copies of the work and publicly display the work under 17 U.S.C. § 106. (Doc. # 1 ¶¶ 30-33.)  All of these claims are clearly contradicted by Section 7.2 of the Agreement, which makes it clear that Righthaven has no rights to use the work for any purpose other than litigation, and is assigned the copyright solely to coat its lawsuits with the veneer of legitimacy. (Exh. A §§ 3.1, 3.3, 3.4, 7.1, 7.2.)

Moreover, the Agreement is clear that Stephens Media is an interested party in this litigation.   Section 5 of the Agreement grants Stephens Media a 50% distribution of Righthaven's recovery in its lawsuits, including this one.  Yet, Righthaven has failed to disclose Stephens Media as an interested party in this case as required by Local Rule 7.1-1. (Doc. # 2.)  In *Democratic Underground*, this District stated that if Stephens Media's recovery of 50% of litigation proceeds minus costs does not create a pecuniary interest under Local Rule 7.1-1, this District "isn't sure what would." Case No. 2:10-cv-01356 (Doc. # 116 at 15:2-18).  Furthermore, this District issued an Order to Show Cause for Righthaven to explain why it should not be liable for sanctions after failing to disclose Stephens Media's obvious financial interest in not only that case, but the hundreds of others filed in this District, including this very case. *Id*.

---

[5] "[T]o the greatest extent permitted by law." (*Id*.)

Randazza
Legal Group
7001 W Charleston Blvd
# 1043
Las Vegas, NV 89117
(888) 667-1113

- 15 -

The Agreement embodied in Exhibit A defines the full scope of Stephens Media's relationship with Righthaven, as its "Clarification" is ineffective in this case, rendering any analysis of an individual copyright assignment superfluous.  It is clear from the Agreement that whatever rights Righthaven does have from Stephens Media are insufficient to lawfully bring its lawsuit against these Defendants (and others as well), and that it lacks standing to do so. Righthaven willfully hid this information from the Court, and when one party discovered it, Righthaven fought extensively to keep the information from other Defendants.  Now that it has seen the light of day, and this Court has opportunity to gaze upon it, Righthaven's deception stands starkly revealed.  This case must be dismissed.

### Conclusion

Under the law of this Circuit and this District, Righthaven does not have the legal right to pursue its copyright infringement claim in this case.  As seen from Exhibits A and B, it has acquired no rights from Stephens Media, and certainly not enough to claim its copyrights were infringed upon.  Evinced by excerpts from Righthaven's operating agreement in Exhibit C, this always was, and is, Righthaven's intent in operating its unlawful lawsuit scheme.  As such, it has not suffered an injury cognizable by law, and its case is not properly before this Court. Therefore, consistent with Federal Rule of Civil Procedure 12(h)(3), this Court should dismiss Righthaven's case against the Defendants.

Dated: June 16, 2011

Respectfully Submitted,

RANDAZZA LEGAL GROUP

J. Malcolm DeVoy IV

Attorney for Defendants,
*NewsBlaze LLC and
Alan Gray*

- 16 -

1

## CERTIFICATE OF SERVICE

2

      Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I am a

3

representative of Randazza Legal Group and that on this 16th day of June, 2011, I caused

4

documents entitled:

5

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER**

6

**JURISDICTION**

7

to be served as follows:

8

    [   ]   by depositing same for mailing in the United States Mail, in a sealed envelope

9

addressed to Steven A. Gibson, Esq., Righthaven, LLC, 9960 West Cheyenne

Avenue, Suite 210, Las Vegas, Nevada, 89129-7701, upon which first class

10

postage was fully prepaid; and/or

11

    [   ]   Pursuant to Fed. R. Civ. P. 5(b)(2)(D), to be sent via facsimile as indicated; and/or

12

13

    [   ]   to be hand-delivered;

14

15

    [ X ]   by the Court's CM/ECF system.

16

17

                      /s/ J. Malcolm DeVoy_____

18

                      J. Malcolm DeVoy

19

20

21

22

23

24

25

26

27

28

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

- 17 -