J. Malcolm DeVoy IV (Nevada Bar No. 11950)
jmd@Randazza.com
RANDAZZA LEGAL GROUP
7001 W. Charleston Boulevard, #1043
Las Vegas, Nevada 89117
Telephone:    (888) 667-1113
Facsimile:    (305) 437-7662
Randazza.com

Attorneys for Defendants,
*NewsBlaze, LLC,*
*and Alan Gray*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN, LLC, a Nevada limited-liability company<br><br>Plaintiff,<br><br>vs.<br><br>NEWSBLAZE LLC, a California limited liability company; and ALAN GRAY, an individual,<br><br>Defendants. | Case No.: 2:11-cv-00720<br><br>**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** |

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

Defendants NewsBlaze, LLC and Alan Gray (collectively, "NewsBlaze," or the "Defendants"), by and through counsel, reply to Plaintiff Righthaven, LLC's (hereinafter "Righthaven['s]," or the "Plaintiff['s]") Response to Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. # 13) filed on July 19, 2011 in opposition to Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. # 6), filed on June 16, 2011.

**I. Introduction**

On July 19, 2011, Righthaven responded to Defendants' Motion to Dismiss (Doc. # 6) after executing an Amendment and Restatement (hereinafter, the "Restatement") of the Strategic Alliance Agreement (hereinafter, the "SAA") between Righthaven and Stephens Media LLC (hereinafter, "Stephens Media"). Decl. of Shawn Mangano (Doc. # 17); Restatement (Doc. # 17-

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

- 1 -

1). The Restatement supposedly rectifies the defects in Righthaven's SAA, which governs the terms on which Stephens Media assigns its copyrights to Righthaven – just as its previously filed Clarification was supposed to do. This Restatement, however, does no such thing.

First, the Restatement is just the latest version of the SAA, which this District has repeatedly held failed to convey Righthaven any copyright rights sufficient to sustain its lawsuits, including this one. Second, Righthaven is bound by the facts as they existed at the time it filed suit on May 5, 2011 (Doc. # 1) – before its "Clarification" (*see* Docs. 13, 14) was effective, and long before this latest Restatement was signed (Doc. # 17-1). Righthaven cannot now claim that the facts as they existed at the time of filing have changed – in fact, they have done so already, each time being rebuffed by this District for doing so. Righthaven cannot now step into a TARDIS[1] and change the transaction by which it obtained its copyright rights at the time of filing, and indeed it has not – in fact, Righthaven repeatedly has attempted this, each time being rebuffed by this District, and resulting in judgment entered against it. *Righthaven, LLC v. Hoehn,* No. 2:11-cv-00050-PMP-RJJ (Doc. # 30) (D. Nev. June 20, 2011); *Righthaven, LLC v. DiBiase*, No. 2:10-cv-01343-RLH-PAL, (Doc. # 73) (D. Nev. June 22, 2011); *Righthaven LLC* v. *Mostofi*, Case No. 2:10-cv-1066 (Doc. 35) (D. Nev. July 13, 2011). This Restatement simply represents Righthaven's latest desperate attempt to acquire whatever rights are necessary to stay in court, while using its allegedly owned copyrights for no purpose other than litigation.

The restructuring of Righthaven's and Stephens Media's Agreement, supposedly effected by the May 9 Clarification (Doc. # 14, 15), and now by the Restatement (Doc. # 17-1), do not affect the nonexistent rights that Righthaven possessed when it filed suit on May 7, 2011. As seen in the rest of the SAA, which remains in effect, Righthaven has no purpose for existence other than to sue on copyrights that it obtains *only after* finding evidence of infringement (Doc. # 6-1). Setting aside the fact that Righthaven has not produced any evidence that would indicate it owns the copyright at issue for anything more than litigation – the stated purpose of its business operating agreement at Section 3.2 – *DiBiase*, Case No. 2:10-cv-01343 (Docs. # 51-1 through

---

[1] The Time And Relative Dimensions in Space machine, or "TARDIS," is the device used by The Doctor to travel through space and time in the long-running British Broadcasting Corporation series *Doctor Who*. See http://www.bbc.co.uk/doctorwho/characters/tardis.shtml (*last accessed* July 27, 2011).

Randazza Legal Group
7001 W Charleston Blvd #1043
Las Vegas, NV 89117
(888) 667-1113

51-4), all that needs to be considered are the rights Righthaven possessed at the time of filing, which are governed by the SAA and consist solely of the specious "right" to sue. *Hoehn*, 2011 WL 2441020 at *6 (D. Nev. June 20, 2011); *Righthaven LLC v. Democratic Underground LLC*, Case No. 2:10-cv-01356, 2011 WL *2378186* at *5 (D. Nev. June 14, 2011); *see Sybersound Records v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008); *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885, 890 (9th Cir. 2005).

In sum, this District has consistently looked to Righthaven' standing as it existed at the time of filing and found it lacking. While the *Hoehn* court did not find Righthaven's Clarification controlling in any way, it analyzed it and found that it, too, did not grant standing to Righthaven. Resisting the obvious conclusion that facts at the time of filing are fixed, Righthaven once again is trying to revive its litigation campaign, including this lawsuit, with yet another change to its underlying contract after its suit has already been filed (Doc. # 1). This case is no different from the nearly half-dozen others that have been dismissed, and should be treated no differently.

**II. Legal Standards**

Subject matter jurisdiction is an essential element to every lawsuit and must be demonstrated "at the successive stages of the litigation." *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 954 (9th Cir. 2011) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). "The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed." *Lujan*, 504 U.S. at 571 n.4 (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989)).

A central component to subject matter jurisdiction is the question of standing, which requires that the party experience actual or imminent harm. *Lujan*, 504 U.S. at 561 (citing *Whitmore v. Ark.*, 495 U.S. 149, 155 (1990)). A party's standing to bring a case is not subject to waiver, and can be used to dismiss the instant action at any time. Fed. R. Civ. P. 12(h)(3); *U.S. v. Hays*, 515 U.S. 737, 742 (1995); *Chapman*, 631 F.3d at 954. Within the realm of copyright law, 17 U.S.C. 501(b) allows only the legal or beneficial owner of an exclusive right in a copyright, specified in 17 U.S.C. § 106, to sue for infringement. *Silvers*, 402 F.3d at 884.

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

### III. Argument

This Court is presented with an inquiry of what rights Righthaven obtains as a result of the assignment of Stephens Media's copyrights to Righthaven, governed by the SAA. The answer to this latter question, as to what rights Righthaven acquired, is "none." This point has been litigated repeatedly and, in numerous cases, reduced to judgment. *Hoehn,* No. 2:11-cv-00050-PMP-RJJ (Doc. # 30); *DiBiase*, No. 2:10-cv-01343-RLH-PAL, (Doc. # 73); *Mostofi*, Case No. 2:10-cv-1066 (Doc. 35). This case is indistinguishable from those in which judgment has been entered against Righthaven on the issue of its standing, and also should similarly be summarily disposed.

Under the SAA, Righthaven does not have standing to bring this case. Accordingly, this Court lacks subject matter jurisdiction over the dispute. Righthaven deceptively cites three cases in which it was the plaintiff for the proposition that Righthaven's assignments are legal under *Silvers*: *Righthaven LLC v. Vote For The Worst, LLC, et al.,* Case No. 2:10-cv-01045-KJD-GWF (Doc. # 28) (D. Nev. March 30, 2011); *Righthaven LLC v. Majorwager.com, Inc.*, 2010 WL 4386499 at *2 (D. Nev. Oct. 28, 2010); *Righthaven LLC v. Dr. Shezad Malik Law Firm P.C., 2010 WL 3522372*, at *2 (D. Nev. Sept. 2, 2010).

Righthaven's reliance on these cases is doubly flawed. These cases considered only a one-page assignment between Righthaven and Stephens Media, and not the SAA that set forth the terms that control that transaction. In those three cases, while Righthaven knew full well of the existence of the Agreement, it appears to have purposely hidden that agreement from the defendants in those cases. As the SAA were not on the public record at the time this District rendered its opinions in these cases, the full scope of Righthaven's relationship with Stephens Media could not be considered.

Similarly, Righthaven's citation of *Righthaven LLC v. Virginia Citizens Defense League Inc. et al*, Case No. 2:10-cv-01683-GMN-PAL (Doc. # 26) (D. Nev. June 23, 2011) is misplaced, if not deceptive. In that case, the SAA was not placed before the Court in the defendants' motion to dismiss (*Virginia Citizens* Doc. # 7), which was based on Rules 12(b)(2) and 12(b)(6) – not 12(b)(1), as NewsBlaze's Motion to Dismiss is (Doc. # 6). To some extent, Righthaven is

Randazza Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

- 4 -

correct: Judge Navarro denied the defendants' motion to dismiss, but on bases that are inapplicable in this case, where the SAA is squarely before the Court, and brought in a Motion to Dismiss pursuant to 12(b)(1), which fundamentally looks beyond the complaint and to the question of whether jurisdiction exists. *Compare Virginia Citizens*, (Doc. # 23) and *Hoehn, 2011 WL 2441020* * 1; *Democratic Underground, 2011 WL 2378186* at *1.

### A. Just as With its Clarification, Righthaven's After-the-Fact Restatement Still Does Not Confer the Right to Sue for Infringement.

In May, Righthaven attempted to salvage its beleaguered SAA by executing the Clarification to the SAA (Docs. # 14, 15).  Contrary to Righthaven's ostensible hopes, though, the Clarification did not reach back and retroactively affect the facts that existed – and lack of rights Righthaven possessed – at the time of filing the lawsuits to consider this issue. *Hoehn, 2011 WL 244020* at *1; *Democratic Underground, 2011 WL 2378186* at *1.  Righthaven spends much time analyzing the rights allegedly conferred by the Restatement, but this is a misdirection: The Restatement did not control the transfer of rights from Stephens Media to Righthaven at the time of this lawsuit's filing, and its existence now, in the midst of a dispute as to whether Righthaven may even sustain this case, is unavailing. *Hoehn, 2011 WL 244020* at *6. Furthermore, Righthaven's arguments that the right to sue for past infringements (Doc. # 13 at 13-14) is unavailing, as it unequivocally did not have any rights sufficient to sustain this lawsuit at the time it was filed. *Id*.

Righthaven further confuses the issue by insinuating that the analysis of its May 9, 2011 Clarification rendered by a colleague of this Court, Judge Pro, gives credence to the Restatement's applicabtility. (Doc. # 13 at 3-4.)  This too is wrong.  The *Hoehn* court's analysis was hinged on the SAA alone, and merely pointed out the deficiencies in Righthaven's Clarification "*even if*" it were to apply. *Hoehn, 2011 WL 244020* at *6.  Such language makes it clear that the Clarification did not, in fact, apply to Righthaven's acquisition of rights – a long-settled point in this jurisdiction, supported by several judgments to that effect. *See Hoehn,* No. 2:11-cv-00050-PMP-RJJ (Doc. # 30); *DiBiase,* No. 2:10-cv-01343-RLH-PAL, (Doc. # 73); *Mostofi,* Case No. 2:10-cv-1066 (Doc. 35).  As the Clarification did not apply to previously filed

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

lawsuits, neither should the Restatement.  Thus, there is no reason for the Court to consider the Restatement – this case is governed by the SAA, and there is no dispute that it is an unlawful attempt to assign Righthaven the "right" to sue. *Hoehn*, 2011 WL 244020 at *6; *Democratic Underground*, 2011 WL 2378186 at *5.

### 1. The Restatement is Not Controlling – But Even if it Were, Righthaven Still Would Not Have Standing To Sue.

Even if the Court were to consider the Restatement, though, it would find that it still fails to confer Righthaven standing to maintain these lawsuits.  The Restatement's own language, and Righthaven's surrounding rhetoric make it clear that this agreement was executed simply so Righthaven could stay in Court. (Doc. # 13 at 5 ("the Restated Amendment […] was expressly prepared in response to the concerns expressed in the *Hoehn* decision"), 17-1 at 1 (stating "the SAA and [First] Amendment were insufficient to transfer sufficient copyright ownership to Righthaven such that it had standing to sue for infringement" as a premise for the Restatement's existence).)

Despite the representations of Righthaven's witnesses (Docs. # 14, 15), the intent of the SAA has already been clearly divined by other Courts: To deprive Righthaven of all rights but the "right" to sue. *DiBiase*, 2011 WL 2473531 at *1*; *Democratic Underground*, 2011 WL 2378186 at *4.  As Righthaven's course of action remains unchanged, using its purported rights solely as the basis for litigation and nothing more, gussied up language between it and Stephens Media does not change the parties' intent as it has existed from day one – for Righthaven to bring lawsuits, nothing more and nothing less.  Unless and until this course of action changes – which is impossible, as it is Righthaven's sole *raison d'etre* – any change to the SAA will be futile.

The Restatement still reserves sufficient rights for Stephens Media, demonstrating that it is the true owner of the copyrights, as opposed to Righthaven.  Under Restatement § 5, Stephens Media can maintain its securitization in copyrights transferred to Righthaven – an action contemplated as a "transfer" of copyright rights under 17 U.S.C. § 101, which recognizes a mortgage or any other conveyance, alienation or other hypothecation of a copyright or exclusive

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

- 6 -

right therein as a "transfer of ownership." (Doc. # 17-1 at 3.)  This is wholly inconsistent with Stephens Media's putative status as a mere non-exclusive licensee under Restatement § 2. (*Id*. at 2.)  The Restatement's flaws do not end there, though.  Under provisions of the SAA that remain in effect, Stephens Media may still settle infringement lawsuits, may have "Recovery Instruments" in its name, and may even be liable for attorneys' fees as a result of a lawsuit brought by Righthaven. (Doc. # 6-1 §§ 9.4, 10.2 and 11.)

Even where the formal terms of the Restatement fail to give Righthaven standing, its substance further reveals Righthaven's lack of rights. Under *Nafal v. Carter*, 540 F. Supp. 2d 1128, 1444 (C.D. Cal. 2007), courts look to the substance, rather than mere language, of an assignment to determine the ownership interests of the parties involved.  Righthaven argues that *Nafal*'s reasoning is inapposite in this case because it interpreted an assignment of rights under the 1909 Copyright Act. (Doc. # 13 at 8.) The *Nafal* court's imperative to analyze the parties' intent is not a function of the 1909 Copyright Act, as opposed to the 1976 Copyright Act, even if the rights being analyzed are construed under it.  Rather, *Nafal* stands for the proposition that courts must look to the true nature of copyright ownership – whatever version of the Copyright Act controls those rights.  The judicially erected tenants of copyright law do not cease to exist or need to be re-created with each iteration of the Copyright Act.  As an example, the court-created doctrine of vicarious copyright infringement applies to both the 1909 and 1976 Copyright Acts, even if the divisibility of rights permitted by the two Acts is different. *See MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 n. 9 (2005); *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (1996); *Shapiro, Bernstein & Co. v. H. L. Green Co.*, 316 F.2d 304, 308 (2d Cir. 1963); *Dreamland Ball Room, Inc. v. Shapiro, Bernstein & Co.*, 36 F.2d 354, 355 (7th Cir. 1929).  Just because the 1909 Copyright Act may provide for different ownership rights than the 1976 Copyright Act does not mean that the Court should refrain from analysis of what the parties' actual rights are, as evinced by the parties' conduct and intent.

Finally, the SAA, its Clarification (Docs. # 14, 15) and the Restatement (Doc. # 17-1) contradict themselves to a point where it is impossible to believe that Righthaven is now, finally, the genuine owner of Stephens Media's copyrights.  Under the SAA, Stephens had an exclusive

- 7 -

right, which became a non-exclusive right with Stephens Media retaining significant control over the transaction under the Clarification. (Docs. # 6 Exh. A, 14, 15.) Now, this Court is expected to believe that Righthaven is the true and beneficial owner of the copyright while it continues on with business as usual – suing individuals for obvious fair uses without daring to use Stephens Media's content for any other purpose, which the parties were careful to ensure was impossible under past agreements. (*See* Docs. # 6-1, 14 Exh. 3 (granting Stephens Media the right to buy back the copyrights assigned to Righthaven before Righthaven could "exploit" them for any purpose).) Indeed, the Clarification spelled out, Righthaven's use of Stephens Media's content would cause Stephens Media "irreparable harm," entitling Stephens Media to seek injunctive relief against Righthaven. *Hoehn*, *2011 WL 2441020* at \*6. Even this provision dialed back the SAA, which "was anything but silent in making sure that Stephens Media retained complete control over the Work rather than actually effectuate the necessary transfer of rights. The entirety of the SAA is concerned with making sure that Righthaven did not obtain any rights other than the right to sue." *Democratic Underground*, *2011 WL 2378186* at \*5.

       Righthaven's hope in its latest Restatement is that the courts will abide only the language on paper in that document, ignoring the original SAA and the Clarification. Yet, the Restatement, representing to be "the parties' […] expressed intentions when entering into the SAA," is clearly at odds with the original, far more restrictive document. If Righthaven's full ownership of the copyrights was the true intention of the parties, why was it rendered impossible under the SAA, with "ownership" incrementally expanded under the Clarification, and now supposedly given *en toto* with this agreement (notwithstanding the limitations pointed out above)? The simple answer is that ownership is not intended by the Restatement – all that was intended was Righthaven's ability to bring lawsuits in Stephens Media's stead, nothing more, nothing less, and this aim is represented in the evolving language of the same SAA.

       The Restatement is at least the second version of the parties' supposed true intent, but this intent never changed, and is best represented in the SAA as the bare, impermissible "right" to sue – no matter what disguise Righthaven is attempting to put it in before the Court. Like the Clarification, the Restatement attempts to keep Righthaven's lawsuits alive, whether through

- 8 -

supposed retroactivity of changes to the SAA, futile amendments to Complaints, or immediately re-filing lawsuits. These are not active controversies, but zombie lawsuits – litigation on well-settled and thoroughly litigated issues that should be terminated – that persist despite all factual and legal indications that their arguments are devoid of vitality. No matter what Righthaven tries to rationalize *ex post* as its "true intent," it is belied by the language of the SAA and its Clarification, which make it clear that Righthaven was never intended to have more than the unlawful "right" to sue. All subsequent amendments pile more weight upon a foundation repeatedly held to be fundamentally unsound, and must fail as well.

### B. Defendants Were Justified in Claiming Righthaven Deceived the Court, and as Righthaven's Deception Continues, Defendants Renew this Claim.

In its Response brief (Doc. # 13), Righthaven argues, incorrectly, that the cause of Defendants' argument for dismissal in light of Righthaven's misrepresentations is "wholly without merit" (Doc. # 13 at 11-12). As with most of Righthaven's contentions, this one is plainly refuted by reality. To the contrary, this District has *adjudged* Righthaven to have made "intentional misrepresentations to the Court," and engaged in conduct that "demonstrated bad faith, wasted judicial resources, and needlessly increased the costs of litigation." *Democratic Underground*, Case No. 2:10-cv-01356 (Doc. # 138) (D. Nev. July 18, 2011). In addition to paying a fine of $5,000 to that court for its misdeeds, Righthaven was also ordered to provide every court – including this one – with copies of its SAA, the *Democratic Underground* court's order dismissing Righthaven's complaint for a lack of standing (Doc. # 116), and a transcript of the July 14, 2011 hearing upon which Document # 138 in that case is based. It is also worth noting that, to date, Righthaven has declined to comply with that order in this (or, to the undersigned's knowledge, any other) case.

Based on the SAA and its Clarification (Docs. # 6 Exh. A, 14, 15), which were the only publicly available information detailing the terms of Stephens Media's assignments to Righthaven, Defendants' arguments were proper under the precedent of this Circuit. *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983); *Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.*, 682 F.2d 802, 806 (9th Cir. 1982). As the number of cases dismissed and

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

- 9 -

reduced to judgment due to Righthaven's lack of standing under the SAA, and prospective lack of standing under the Clarification, there is no question that Righthaven lacked the exclusive rights asserted in its Complaint – but it asserted them anyway.

At the time this argument was made (Doc. # 6) on June 16, 2011, Righthaven's and Stephens Media's Restatement was not available on the public record, nor did it even exist. (Doc. # 17-1 at 4.) More to the point, Righthaven apparently operated for almost one and one-half years without amending the SAA, then quickly executed its Clarification on May 9, 2011, when it began having to oppose numerous motions to dismiss based on the SAA. *See Hoehn*, Case No. 2:11-cv-00050 (Docs. # 23-25) (D. Nev. May 9, 2011); *Vote for the Worst*, Case No. 2:10-cv-01045 (Docs. # 40-42) (D. Nev. May 9, 2011). This, along with its latest Restatement, is clear evidence that Righthaven was caught with its hand in the proverbial cookie jar of unlawful copyright assignments, and is desperately, retroactively trying to protect its business model. As explained at the outset of this brief, Righthaven's backward-looking attempt to make its model legal under the precedent of this Circuit is not only unsuccessful, but does not cure its existing lack of exclusive rights alleged in Defendants' Motion to Dismiss (Doc. # 6).

For the reasons articulated above, Righthaven still has not acquired the copyrights it allegedly owns through Stephens Media's fraudulent assignments. As such, Righthaven's assertions that it is the "owner" of the copyrighted work and possesses the exclusive rights to reproduce the work, create derivatives of the copyrighted work, distribute copies of the work and publicly display the work under 17 U.S.C. § 106, (Doc. # 1 ¶¶ 11, 23, 30-33) are false.

Given the progressive nature with which the Clarification and Restatement purport to retreat from the SAA's clear purpose, it is clear that Righthaven is looking to find the exact point at which it can speciously claim to have rights and continue its champertous exercise. None of this changes the fact that, at the time of this suit's filing, Righthaven did not have standing to sue. And, based on the intent of Stephens Media and Righthaven – to incrementally modify a document that clearly did not confer Righthaven the right to sue until it hopefully does, each time claiming that they have finally articulated the parties' true intent (even if it is opposite their previously stated "true intent") – any rights supposedly conveyed by the Restatement are just as

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

nonexistent as those provided under the SAA. The Court should recognize what these documents really mean – that the parties conspired to unlawfully create a copyright litigation entity, with no actual assignment of any intellectual property rights. Upon doing so, this Court should end this case immediately, and with prejudice. No matter how many amendments and restatements Righthaven proffers, the supposed changes are just costumes put on an unlawful operation possessing an intent that is as clear as it is repugnant to the law of this Circuit.

## Conclusion

Righthaven's Restatement does not govern this lawsuit, as much as Righthaven may argue to the contrary (and, unsurprisingly, generally does not – insisting on the Restatement's validity rather than its applicability) (Doc. # 13). As such, Righthaven lacks, and has never possessed, standing to bring this action. This Court therefore lacks subject matter jurisdiction over the dispute. Defendants' allegations of Righthaven's representations were, and continue to be, accurate, and provide this Court another justification for dismissing this action.

Moreover, the changes Righthaven has made to the SAA in the Restatement (and presumably will make more of in the future) do not change the parties' intent as expressed in the original SAA, its conflicting Clarification, and Righthaven's conduct to date as a singularly focused litigation enterprise. Future changes to the SAA will be equally futile, and should be preemptively denied. If litigation were baseball, Righthaven would have just swung mightily and utterly missed the ball with its Restatement, racking up its third strike at creating standing in its cases and being sent back to the dugout by the umpire. Accordingly, Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. # 6) should be granted with prejudice.

Dated: July 29, 2011

Respectfully Submitted,
RANDAZZA LEGAL GROUP

_____
J. Malcolm DeVoy IV

Attorney for Defendants,
*NewsBlaze LLC*
*and Alan Gray*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I am a representative of Randazza Legal Group and that on this 29th day of July, 2011, I caused documents entitled:

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

to be served as follows:

[   ]   by depositing same for mailing in the United States Mail, in a sealed envelope addressed to Steven A. Gibson, Esq., Righthaven, LLC, 9960 West Cheyenne Avenue, Suite 210, Las Vegas, Nevada, 89129-7701, upon which first class postage was fully prepaid; and/or

[   ]   Pursuant to Fed. R. Civ. P. 5(b)(2)(D), to be sent via facsimile as indicated; and/or

[   ]   to be hand-delivered;

[ X ]   by the Court's CM/ECF system.

                                                   /s/ J. Malcolm DeVoy
                                                   J. Malcolm DeVoy